**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CLIFFORD HARRIS,                     :
                                     :     Civil Action No. 06-4276 (JAG)
            Petitioner,       :
                                     :
            v.                :              **OPINION**
                                     :
MICHELLE R. RICCI, et al.,    :
                                     :
            Respondents.      :


**APPEARANCES:**

       CLIFFORD HARRIS, Petitioner Pro Se
       # 295159/807250B
       New Jersey State Prison
       P.O. Box 861
       Trenton, New Jersey 08625

       THEODORE J. ROMANKOW, ESQ.
       Union County Prosecutor's Office
       ATTN: SARA B. LIEBMAN, ESQ.
       32 Rahway Avenue
       Elizabeth, New Jersey 07202-2115
       Counsel for Respondents

**GREENAWAY, JR.**, District Judge

       This matter is before the Court on Petitioner Clifford

Harris' petition seeking habeas corpus relief under 28 U.S.C.

§ 2254.  For reasons discussed below, the petition for habeas

corpus relief will be denied.

I.   BACKGROUND

A.   Statement of Facts

The facts of this case are recounted below.  This Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation, as set forth in its October 23, 2000 published Opinion resolving petitioner's direct appeal from his conviction.

> In the afternoon of November 21, 1994, Jonathan Harrigan, who had known defendant for many years, saw defendant on the corner of 6th Street in Plainfield.  Harrigan was driving his girlfriend's Toyota Camry.  Defendant asked Harrigan to take him and his friend Ray to get something to eat.  Harrigan agreed.  As they were driving to a restaurant, Erroll Minott, who was standing with Julian Payne, waved for Harrigan to stop.  As Minott and Harrigan talked, defendant got out of the car and had a conversation with Payne.  Harrigan could not hear the conversation between defendant and Payne, but Minott believed they were arguing.  After defendant returned to the car, they drove away.

> Defendant told Harrigan he needed to get his car keys from a friend who lived nearby.  Harrigan drove to Franklin Street.  Defendant exited the car and entered a green house.  A short while later, defendant returned to the car carrying a red, yellow, and green baseball/Jamaican-style cap.  They drove to a restaurant where defendant purchased a take-out order.

> After leaving the restaurant, Harrigan drove to Minott's house on Westervelt Avenue.  Minott and Payne were sitting on a porch a few houses from Minott's residence.  The area was known for being a place where drugs could be purchased.  A neighbor, Derrick McDowell, approached Minott and told Minott he would pay Minott the five dollars he owed him when he returned from the liquor store.

> Defendant left the car and entered the driveway next to an abandoned building with Payne.  Defendant began to argue with Payne about drugs.  Defendant told Payne, "No, I'm going to get it" and that Payne was trying to cheat him out

of drugs.  Payne denied and said he would get the "weed" for
defendant.  Minott told Payne to return defendant's money to
him.  Payne started up the driveway and defendant ran up to
him demanding to know where he was going with his money.
Defendant and Payne began to wrestle.  At one point the two
fell to the ground and rolled into the street.  Harrigan
went to separate the two, but before he could, at least two
shots were fired.  Payne fell to the ground.

Defendant, holding a gun, motioned for Harrigan to get in
the car.  After defendant entered the front passenger seat,
Harrigan drove away.  Ray, who had remained in the car
during the entire incident, was still in the back seat.
Harrigan drove to defendant's house where defendant and Ray
exited the car.

Meanwhile, Juan Tobar, who lived on the second floor of 24
Westervelt, had been smoking at the window when he saw
Harrigan's Toyota parked on the street.  Tobar saw defendant
go between the houses.  A short while later he heard two
shots.  He then saw defendant and Payne fighting.  Payne had
his hands around defendant's throat as they struggled.
Tobar saw the two men roll into the street and heard two
more shots.  Payne then fell to the ground.  Tobar recorded
the license plate on the Toyota as it drove away.  He later
gave the license plate number WL-25X7 or 27X7 to the police.

The police arrived at the scene.  Payne was pronounced dead
at 6:17 p.m.  An autopsy was performed on Payne.  He had
three gunshot wounds.  The wound to the upper chest was
fatal and was at close range.  A bullet recovered from the
scene and one recovered from Payne were found to be fired
from the same gun.  The shell casings recovered from the
scene were from a .9 millimeter gun.  David Ward, Payne's
cousin, testified that the previous week defendant had
pointed a .9 millimeter Smith and Wesson at him.  Harrigan
and Minott identified defendant as the shooter.

Defendant did not testify.  However, he called two witnesses
from his former school in the Virgin Islands to testify they
had seen him on November 21, 1994 in the Virgin Islands.
Yvonne Christian, a secretary at the school, testified she
was almost sure she saw defendant on November 21, 1994 at
the school.  Lionel Gums, a teacher, also testified he
remembered seeing defendant on November 21, 1994 in the
Virgin Islands.

3

In rebuttal, the State presented evidence to establish that several of the defense witnesses had given police statements placing defendant in Plainfield on the day of the shooting but they had changed their story once it was known that defendant was asserting an alibi defense.

The jury found defendant guilty of murder, possession of a weapon for an unlawful purpose, and unlawful possession of a weapon.

(Ra14, October 23, 2000 Appellate Division Opinion on direct appeal, at pages 2-5).[1]

---

[1]  The state court record submitted by respondents' counsel, relevant to this matter, is designated by reference to the Respondents' Appendix ("Ra"), as follows:

| | |
|---|---|
| Ra1 | transcript of trial dated July 8, 1997 |
| Ra2 | transcript of trial dated July 9, 1997 |
| Ra3 | transcript of trial dated July 10, 1997 |
| Ra4 | transcript of trial dated July 14, 1997 |
| Ra5 | transcript of trial dated July 15, 1997 |
| Ra6 | transcript of trial dated July 16, 1997 |
| Ra7 | transcript of trial dated July 17, 1997 |
| Ra8 | transcript of trial dated July 18, 1997 |
| Ra9 | transcript of trial dated July 22, 1997 |
| Ra10 | transcript of trial dated July 23, 1997 |
| Ra11 | transcript of sentencing dated September 5, 1997 |
| Ra12 | transcript of post-conviction relief ("PCR") hearing dated December 17, 2003 |
| Ra13 | transcript of decision denying PCR petition, dated April 22, 2004 |
| Ra14 | Appellate Division opinion on direct appeal, dated October 23, 2000 |
| Ra15 | State's brief on direct appeal, dated February 14, 2000 |
| Ra16 | State's answer to PCR petition, dated March 11, 2003 |
| Ra17 | State's supplemental answer to PCR petition, dated September 12, 2003 |
| Ra18 | Trial court order denying PCR petition, dated April 22, 2004 |
| Ra19 | Petitioner's Notice of Appeal from denial of PCR, filed October 15, 2004 |
| Ra20 | Petitioner's brief on appeal from denial of PCR, dated September 14, 2005 |
| Ra21 | State's brief in response to appeal from denial of PCR, dated January 10, 2006 |
| Ra22 | Appellate Division opinion affirming denial of |

B.  <u>Procedural History</u>

Petitioner, Clifford Harris ("Harris"), was indicted by a Union County Grand Jury on May 1, 1996, on the following charges: (Count One) murder;(Count Two) second degree possession of a weapon, handgun, for an unlawful purpose; and (Count Three) third degree unlawful possession of a weapon.

A jury trial commenced on July 8, 1997, before the Honorable Miriam N. Span, J.S.C.  The jury returned a verdict on July 23, 1997, finding Harris guilty on all counts.  Judge Span sentenced Harris, on September 5, 1997, to an aggregated prison term of 30 years without parole.

On December 17, 1997, Harris submitted a motion to file a Notice of Appeal <u>nunc</u> <u>pro</u> <u>tunc</u>.  On January 5, 1998, the Superior Court of New Jersey, Appellate Division, granted petitioner's motion.  The New Jersey Appellate Division affirmed the conviction and sentence in an unpublished opinion filed on October 23, 2000.  It is not asserted that Harris filed a

---

|       | PCR, dated March 28, 2006 |
| Ra23  | Petitioner's notice to file a petition for certification, filed April 19, 2006 |
| Ra24  | Petitioner's notice to file a petition for certification <u>nunc</u> <u>pro</u> <u>tunc</u>, filed May 15, 2006 |
| Ra25  | Petitioner's notice to file a petition for certification <u>nunc</u> <u>pro</u> <u>tunc</u>, filed May 15, 2006 |
| Ra26  | Petitioner's petition for certification and appendix, dated May 4, 2006 |
| Ra27  | State's answer to petition for certification, dated May 30, 2006 |
| Ra28  | New Jersey Supreme Court Order denying petition for certification, dated July 6, 2006 |

petition for certification with the Supreme Court of New Jersey from denial of his direct appeal.[2]

Thereafter, Harris filed a petition for post-conviction relief ("PCR") in state court. A hearing on Harris' state PCR petition was conducted on December 17, 2003, before the Honorable Scott J. Moynihan, J.S.C. Judge Moynihan denied the PCR petition by Order dated April 22, 2004, for the reasons set forth on the record. (See 12T, transcript of April 22, 2004 decision).

On October 15, 2004, Harris filed a Notice of Appeal from denial of his state PCR petition. In an opinion filed on March 28, 2006, the Appellate Division affirmed Judge Moynihan's decision denying post-conviction relief. Harris filed a petition for certification with the New Jersey Supreme Court. The New Jersey Supreme Court denied certification on July 6, 2006.

Harris then filed this petition seeking habeas relief, under 28 U.S.C. § 2254, on or about September 3, 2006. Respondents answered the petition on December 27, 2006, and provided this Court with a copy of the relevant state court record for habeas review. On January 22, 2007, Harris filed a letter objecting to the respondents' answer. (Docket Entry No. 11).

In a separate letter, Harris complained that the State did not provide the transcripts of the Grand Jury proceedings and the pretrial proceedings. (Docket Entry No. 10). He also filed a

---

[2] The state court record provided by respondents also does not contain any documentation regarding a petition for certification on direct appeal.

letter asking that he be released on bail pending resolution of the habeas proceedings.  (Docket Entry No. 12).

## II.  STATEMENT OF CLAIMS

In his habeas petition, Harris raises the following claims for habeas relief:

Ground One: Petitioner's right to due process under the Fourteenth Amendment was violated because he did not receive a pretrial evidentiary hearing with respect to prosecution witnesses, who testified at trial but were not listed in discovery, and the prosecutor showed a gun to the jury that was not listed in the discovery evidence.

Ground Two: Petitioner contends that his Sixth Amendment right to confront witnesses was violated when the jury asked for a "read back" of State witness' testimony.  This witness stated at trial that petitioner was the shooter, but failed to identify petitioner in an out-of-court photo line-up identification.

Ground Three: Petitioner was held in a Bronx jail without a warrant and without a grand jury indictment in violation of the Fifth Amendment.  Petitioner also complains that his right to a speedy trial under the Sixth Amendment was violated because it took more than one year from the time he was indicted until his trial commenced.

Ground Four:  Police Officer Gallagher testified at trial that petitioner gave him a statement, but told the Grand Jury that no statement had been taken from petitioner.

The State answered the petition asserting that petitioner has failed to exhaust all available state court remedies. 28 U.S.C. § 2254(b). Alternatively, the State contends that petitioner's claims are without merit or do not state a cognizable federal claim involving a federal constitutional violation.

### III.   EXHAUSTION ANALYSIS

A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render such process ineffective ... ." 28 U.S.C. § 2254(b)(1). See also Rose v. Lundy, 455 U.S. 509, 515 (1982); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001) (finding that "Supreme Court precedent and the AEDPA mandate that prior to determining the merits of [a] petition, [a court] must consider whether [petitioner] is required to present [his or her] unexhausted claims to the [state's] courts").

The exhaustion doctrine is a "total" exhaustion rule. That is, "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims [('mixed' petitions)]." Lundy, 455 U.S. at 522. At the time Lundy was decided, there was no statute of limitations on the filing of federal habeas petitions. The enactment in 1996 of a one-year limitations

8

period for § 2254 habeas petitions,[3] however, "'has altered the context in which the choice of mechanisms for handling mixed petitions is to be made.'" Crews v. Horn, 360 F.3d 146, 151 (3d Cir. 2004) (quoting Zarvela v. Artuz, 254 F.3d 374, 379 (2d Cir.), cert. denied, 534 U.S. 1015 (2001)).  Indeed, the one-year limitations period and dismissal of a timely-filed mixed petition may forever bar a petitioner from returning to federal court. "Staying a habeas petition pending exhaustion of state remedies is a permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition." Crews, 360 F.3d at 151.  The Court of Appeals for the Third Circuit has held that "when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action." Crews, 360 F.3d at 154.

The Supreme Court has somewhat limited the stay-and-abeyance rule announced in Crews.

> [S]tay and abeyance should be available only in limited circumstances.  ...  [S]tay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.  Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.
>
> ...
>
> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good

---

[3] See 28 U.S.C. § 2244(d).

cause for his failure to exhaust, his unexhausted
claims are potentially meritorious, and there is no
indication that the petitioner engaged in intentionally
dilatory litigation tactics.  In such circumstances,
the district court should stay, rather than dismiss,
the mixed petition.  ...  For the same reason, if a
petitioner presents a district court with a mixed
petition and the court determines that stay and
abeyance is inappropriate, the court should allow the
petitioner to delete the unexhausted claims and to
proceed with the exhausted claims if dismissal of the
entire petition would unreasonably impair the
petitioner's right to obtain federal relief.

Rhines v. Weber, 544 U.S. 269, 277-78 (2005) (citations
omitted).[4]

Here, respondents have elected to assert the defense of
failure to exhaust and have asked this Court to dismiss the
Petition as unexhausted.  (Answer at ¶ 12).  Specifically,
respondents comment that Harris raised an ineffective assistance
of counsel claim regarding a myriad of issues in his state PCR
proceedings, but the particular grounds alleged in this habeas
petition were not actually asserted in the state proceedings.

After a careful review of the state court record, this Court
finds that some of petitioner's claims have not been fully

---

[4] Even where stay and abeyance is appropriate, the district
court's discretion in structuring the stay is limited by the
timeliness concerns reflected in the one-year statute of
limitations.  "Thus, district courts should place reasonable time
limits on a petitioner's trip to state court and back."  Id. at
278.  See also Crews, 360 F.3d at 154 ("If a habeas petition is
stayed, the petitioner should be given a reasonable interval,
normally 30 days, to file his application for state post-
conviction relief, and another reasonable interval after the
denial of that relief to return to federal court.  If a
petitioner fails to meet either time-limit, the stay should be
vacated nunc pro tunc.") (citations omitted).

exhausted in state court.  Namely, Ground Three appears to be unexhausted.  It alleges that Harris was denied a speedy trial contrary to the Sixth Amendment, and that he was held in jail without a warrant or grand jury indictment, contrary to the Fifth Amendment.  For the most part, however, the claims asserted in Grounds One, Two, and Four appear to have been raised in the context of petitioner's ineffective assistance of counsel claims during the state PCR proceedings.

Nevertheless, to the extent that these habeas claims were not exhausted, this Court observes that, pursuant to 28 U.S.C. § 2254(b)(2), it has the authority to deny the habeas petition on the merits, even if petitioner failed to exhaust the remedies available to him in state court.  28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also Duncan v. Walker, 533 U.S. 167, 203 n.6 (2001)(noting that under § 2254(b)(2), a district court may deny non-exhausted, non-meritorious claims); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003)(same).

This Court is inclined to follow § 2254(b)(2) and review all claims asserted to determine whether they are plainly without merit.

IV.  <u>STANDARD OF REVIEW</u>

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).  Here, petitioner is a <u>pro se</u> litigant.  This Court will accord his petition the liberal construction applicable for <u>pro se</u> petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  <u>See</u> 28 U.S.C. § 2254(e); <u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir.), <u>cert</u>. <u>denied</u>, 534 U.S. 919 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir. 1996)(*citing* <u>Parke v. Raley</u>, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

12

                    established Federal law, as determined by the
                    Supreme Court of the United States; or
          (2)   resulted in a decision that was based on an
                    unreasonable determination of the facts in light
                    of the evidence presented in the State court
                    proceeding.

28 U.S.C. § 2254(d).

     In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme
Court explained that subsection (d)(1) involves two clauses or
conditions, one of which must be satisfied before a writ may
issue.  The first clause, or condition, is referred to as the
"contrary to" clause.  The second condition is the "unreasonable
application" clause.  Williams, 529 U.S. at 412-13.

     In the "contrary to" clause, "a federal court may grant the
writ if the state arrives at a conclusion opposite to that
reached by [the Supreme] Court on a question of law or if the
state court decides a case differently than [the Supreme] Court
has on a set of materially indistinguishable facts."  Id.

     Under the "unreasonable application" clause, a federal court
may grant the writ if "the state court identifies the correct
governing legal principle from [the Supreme] Court's decisions
but unreasonably applies that principle to the facts of [the
petitioner's] case."  Id. at 413.  Habeas relief may not be
granted under the "unreasonable application" condition unless a
state court's application of clearly established federal law was
objectively unreasonable; an incorrect application of federal law
alone is not sufficient to warrant habeas relief.  Id. at 411.

13

See also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v. Brennan, 528 U.S. 824 (1999).

Consonant with Williams, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims.  First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims.  See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.  Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result.  Id.  AEDPA prohibits such de novo review. Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable.  Id.  In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court

14

precedent.  *Id.*; *see also* Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002), *cert*. *denied*, 538 U.S. 1000 (2003)(*citing* Weeks v. Angelone, 528 U.S. 225, 237 (2000).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  *See* Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), *cert. denied*, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  *See also* Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  *Id.*; *see also* 28 U.S.C. § 2254(e)(1).  The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  *See* Duncan, 256 F.3d at 196 (*citing* 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

V.   ANALYSIS

     This Court will examine each of petitioner's claims on the
merits, pursuant to the standard of review as recited above.

A.   Failure to Have a Pretrial Evidentiary Hearing

     In Ground One (Claim A), Harris asserts that he did not
receive a pretrial evidentiary hearing regarding witnesses who
had testified at trial but were not listed in his pretrial
discovery.  Harris claims that this omission violated his right
to due process under the Fourteenth Amendment.

     It does not appear that this claim was raised separately
from petitioner's omnibus state PCR petition alleging ineffective
assistance of trial counsel.  A review of the trial record shows
that several witnesses were called by the State on rebuttal.
These witnesses, Steve Heylinger, Sonia Lenhardt, Rene Lloyd, and
Lettsome James, had given statements to Detective Marcantonio
placing Harris in Plainfield, New Jersey the day before and the
day of the murder.  Detective Marcantonio took these statements
after notice had been given of defendant's alibi.  However, some
of the witnesses later recanted to the defense attorney after
they had learned of Harris' alibi defense, which was not raised
by defendant's counsel until June 19, 1997, shortly before trial
began.

     Prior to the witnesses' trial testimony, the court conducted
a N.J.R.Evid. 803(c) hearing outside the presence of the jury,
regarding the admissibility of the witnesses' out-of-court

statements.  The Rule 803(c) hearing was conducted as to each witness, including the detective.  Based on the trial record itself, petitioner's claim of surprise and denial of due process lacks merit.

B.  <u>Prosecutorial Misconduct Concerning Use of a Gun at Trial</u>

Also in Ground One of his petition, Harris claims that the prosecutor showed a gun at trial, which was not the actual weapon and which was not listed in discovery.  Harris contends that the prosecutor's misconduct in this regard violated his Fourteenth Amendment right to due process.  This claim was raised in the state PCR proceedings, although couched as part of petitioner's claims that his trial counsel was ineffective.  Specifically, Harris argued that his trial counsel was ineffective for failing to object to the prosecutor's prompted demonstration by two witnesses as to how they saw the defendant hold the gun after the victim had fallen to the ground.  The gun used by the witnesses was a demonstration gun brought to court by the prosecutor.

In the state court's decision denying post-conviction relief, Judge Moynihan found:

> It was certainly permissible for an eyewitness to show how he saw defendant holding the actual gun after the victim fell to the ground.  This reenactment was useful evidence for the jury and the brief demonstration certainly was not sufficiently prejudicial to warrant objection.  <u>State v. Mayberry</u>, 52 N.J. 413 (1968), <u>cert</u>. <u>denied</u>, 393 U.S. 104 (1969); <u>State v. Gear</u>, 115 N.J. Super. 151 (App. Div. 1971).
>
> Furthermore, since shell casings were found at the scene it was proper for the State to produce evidence of the difference between a revolver and a semiautomatic weapon.

> The use of a semiautomatic handgun to show how it ejects
> spent shells is probative and no prejudice from its use is
> apparent.  Certainly the victim here was killed by a bullet
> fired from a handgun.  3T (July 10, 1997) 160:14-19; 173:7-
> 13.  An objection here was not warranted. ...
>
> The defendant argues that "the continual use of the gun and
> the testimony in the record demonstrates that it was not
> clear to the jury that the gun was not recovered at the
> murder scene and, thus, there was a great chance of jury
> confusion."  Defendant's brief, December 16, 2002, page 31.
> The argument ignores the plain language with which the court
> instructed the jury:
>
> "For you to find Clifford Harris guilty of the second
> charge, the State has to prove beyond a reasonable doubt
> these four elements of the crime: Number one, that there was
> a firearm that was used.  You will note there is no firearm
> in evidence.  There was a sample firearm that was shown to
> you showing how it worked, but no firearm was actually
> recovered from the scene of the shooting.  That's not
> necessary.  You can use circumstantial evidence, if you feel
> it is appropriate, to determine whether the State has proven
> that there was a firearm that was possessed by the defendant
> at the time, all right?"  10T (July 23, 1997) 26:12-22.
>
> Similarly, the judge did not refer to a specific weapon for
> the unlawful possession of a weapon charge.  10T 29:12-14.
> Thus, there is no error upon which to base any relief to
> defendant.

(Ra13, April 22, 2004 Transcript of decision denying state PCR,

25:19-27:14).

On appeal from denial of the state PCR, the Appellate

Division affirmed "substantially for the reasons set forth in

Judge Moynihan's comprehensive oral opinion of April 22, 2004."

(Ra22, March 28, 2006 Appellate Division Opinion, at pg. 3).

Habeas review of a claim based on prosecutorial misconduct

is limited to determining whether the conduct "so infected the

trial with unfairness as to make the resulting conviction a

denial of due process." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974). "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982). If it does not infect the entire trial, misconduct alone is not enough to warrant a new trial. <u>Id.</u> at 220. "A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments [or conduct] standing alone, for the statements or conduct must be viewed in context." <u>United States v. Young</u>, 470 U.S. 1, 11 (1985).

However, the Supreme Court of the United States has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

> He may prosecute with earnestness and vigor – indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. ... Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

<u>Berger v. United States</u>, 295 U.S. 78, 88 (1935).

"Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of

evidence against the defendant." <u>Moore v. Morton</u>, 255 F.3d 95, 107 (3d Cir. 2001).

Here, this Court finds that the prosecutor's use of a handgun as demonstrative evidence was proper and related to evidence and testimony at trial.  Moreover, the demonstration did not have the capacity on its own to so infect the trial with unfairness as to make the resulting conviction a denial of due process.  The state courts expressly found no impropriety by the prosecutor, and that the demonstration was permissible under state law and rules of evidence.  Further, the state court held that there was no prejudicial impact to petitioner from the use of the gun at trial.  The trial judge properly instructed the jury on the issue as noted above.

This Court finds no error of constitutional dimension with respect to this claim of prosecutorial misconduct.  The state court ruling was not contrary to, and did not involve an unreasonable application of, clearly established federal law; nor was it based on an unreasonable determination of the facts presented in the state court proceedings.  Accordingly, this claim will be denied.[5]

_____

[5]  The State argues in its answer that this claim is not cognizable under habeas review because it involves an issue as to the admissibility of evidence, which is generally a question of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991); <u>Johnson v. Rosemeyer</u>, 117 F.3d 104, 112-15 (3d Cir. 1997).  <u>See also</u> <u>Keller v. Larkins</u>, 251 F.3d 408, 416 n.2 (3d Cir.), <u>cert. denied</u>, 534 U.S. 973 (2001).  Federal courts must afford the states deference in its determinations regarding evidence and procedure.  <u>See</u> <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986).  It

C.   <u>The Read-Back Testimony of Derrick McDowell</u>

In Ground Two of the petition, Harris argues that read-back to the jury of Derrick McDowell's trial testimony violated petitioner's Sixth Amendment right to be confronted with the witnesses against him.   In 1994, during a photo line-up

---

is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim.   The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." <u>Smith v. Horn</u>, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), <u>cert.</u> <u>denied</u>, 522 U.S. 1109 (1998).

However, evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial." <u>Hutchins v. Hundley</u>, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(Wolin, J.)(citations omitted); <u>see</u> <u>also</u> <u>Kontakis v. Beyer</u>, 19 F.3d 110, 120 (3d Cir. 1994), <u>cert.</u> <u>denied</u>, 513 U.S. 881 (1994); <u>Lisenba v. California</u>, 314 U.S. 219, 228, 236 (1941)(holding that state court's evidentiary rulings may form the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law").

The appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure." <u>Hutchins</u>, 1991 WL 167036 at *4 (citing <u>United States v. De Luca</u>, 889 F.2d 503, 506 (3d Cir. 1989), <u>cert.</u> <u>denied</u>, 496 U.S. 939 (1990))(other citations omitted).   The Supreme Court has further stated that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 681 (1986).   An error is not harmless if "it aborts the basic trial process or denies it altogether." <u>Hutchins</u>, 1991 WL 167036 at *5 (citing <u>Rose v. Clark</u>, 478 U.S. 570, 578 n.6 (1986)).

Here, as noted above, this Court finds that the demonstration of a handgun at trial was not an error of a constitutional dimension.   There is simply no evidence of impropriety by the prosecutor.   There also is nothing alleged by petitioner or evident from the trial record to demonstrate that the trial process was fundamentally unfair.   Proper jury instructions were given to ensure that the jury was aware that the handgun was not evidence of the actual firearm used in the crime.   This ground for habeas relief will be denied.

identification with the police, McDowell was unable to identify Harris as the shooter.  Instead, he chose the picture of another individual, not Harris.  At trial, however, to the surprise of counsel and the prosecutor, McDowell identified Harris as the shooter he saw on the day of the murder.

Harris raised similar issues about McDowell's testimony in his state PCR proceedings.  He complained that his counsel failed to object to McDowell's testimony, failed to ask for a <u>Wade</u> hearing[6] before McDowell's testimony, and failed to request a specific charge as to McDowell's testimony.  The PCR court held:

> There is no evidence that the State had notice of McDowell's recantation.  The State, therefore, committed no error.  There was no intentional or unintentional withholding of evidence proved here.  As Depa testified at the evidentiary hearing, he believed McDowell would testify that he identified someone else other than the defendant as the perpetrator; i.e., that he would testify consistent with the report that he picked out someone else from the photo array.  Depa testified that the State seemed as surprised as the defense.  No "notice of recantation" was necessary because no one had such notice.  There is no proof at all of defendant's assertion that the State deliberately and intentionally withheld such evidence.  Anyone who has tried a case has had witnesses testify contrary to what counsel thought they would say.
> ...
>
> Further, there were no grounds for a <u>Wade</u> hearing.  The misidentification belies any suggestiveness.  Defense has made no showing of suggestiveness or other reasons for a <u>Wade</u>.  <u>See</u> <u>State v. Ortiz</u>, 203 N.J. Super. 518 (App. Div. 1985), <u>cert</u>. <u>denied</u>, 102 N.J. 335 (1985); <u>State v. Rodriquez</u>, 264 N.J. Super. 261 (App. Div. 1993).  Indeed, McDowell admitted that he picked out the wrong photo because he did not want to be involved in the case.  2T (July 9, 1997) 186:5-11.  McDowell's explanation for the misidentification was certainly not objectionable.  The

---

[6]   <u>United States v. Wade</u>, 388 U.S. 218 (1967).

reasons for his divergent testimony had to be explored.
State v. Gray, 112 N.J. Super. 412, 417-18 (App. Div. 1970).

Lastly, defendant mentioned some purported problems with
regard to the jury's request during deliberation for read
back of McDowell's testimony.  This Court believes that
those problems are cited only to highlight how important
defendant thinks McDowell's testimony was.  Defendant's
brief of December 16th [sic], 2002, Page 41.

The pertinent part of the brief reads: "His (McDowell's)
testimony was pivotal.  This is evident by the fact the jury
requested a read back of his testimony during
deliberations."  Defendant's brief at Page 41.  The defense
brief then goes to allege that the read back was
"orchestrated" to repeat testimony perceived to be
beneficial to the prosecution and that this was unchecked by
defense counsel.  A footnote asks this Court to compare the
read back to "testimony of 1T 186-88."  The cited testimony
refers to the direct testimony of Jonathan Harrigan.  Thus,
defendant's argument is not at all clear.

In any event, as was set forth in State v. Wilson, 165 N.J.
657, 660, "It is well established that 'the reading of all
or part of testimony of one or more of the witnesses at
trial, criminal or civil, at the specific request of the
jury during their deliberations is discretionary with the
trial court.'" [Citations omitted].

The court continued, "Where a request is clearly
circumscribed the trial court has no obligation to compel
jurors to hear testimony that they have not asked for or
continue a read back after they have expressly indicated
that they have heard enough. [Citations omitted].  That is
so even if one of the parties registers a request for
further read back."  State v. Wilson, supra. at 661.

Defendant offers no proof of the "orchestrated" nature of
the read back or that the judge abused her discretion in
allowing read back.  The defense contends that the direct
testimony at 2T 172-180 was sufficient to answer the jury's
request without giving the cross-examination that was read.
This argument ignores the Supreme Court's mandate in Wilson.
"As a general rule if a jury requests a read back of the
testimony of a witness, the read back should include both
direct and cross-examination.  The reason is obvious.
Cross-examination affords a full view of the witness's
testimony including inconsistencies and impeaching material.
Thus, a jury's uncircumscribed request for a read back of a

witness's testimony ordinarily is 'presumed to include
cross-examination.'" [Citations omitted].  165 N.J. at 660-
661.

Defendant next contends that the jury was told they were
listening to the direct examination by the assistant
prosecutor when they were in fact listening to cross-
examination by Depa.  The defendant has made no showing
whatsoever that that simple mistake had any effect on the
outcome of the trial, especially since the court reporter
later told the jury that they were listening to cross-
examination by Depa.

Defendant then contends that a different read back should
have been given and says that the Appellate Division was
confused when they reviewed some found facts [sic] in this
case.

This Court will not even address the purported confusion of
the Appellate Division as contended by defendant.  This
Court has no authority to second guess the Appellate
Division and has no business in speculating what the
Appellate Division did or did not understand.  No appeal was
taken as far as this Court knows of the Appellate Division
decision and a PCR is no substitute for same.  State v.
Cerbo, 78 N.J. 595 (1979); State v. Cacamis, 230 N.J. Super.
1 (App. Div. 2007).

Defendant indicates Depa failed to request a specific charge
regarding McDowell's credibility yet did not proffer a
proposed charge.  Instructions must be balanced and although
the court should allude to the facts in evidence to explain
the use of a given instruction, it cannot highlight one
party's theory of argument.  State v. Robinson, 165 N.J. 32
(2000); State v. Jones, 104 N.J. Super. 57 (App. Div. 1968),
cert. denied, 53 N.J. 354 (1969).

The court gave the general credibility charge and the jury
could have applied it to the discrepancies brought out by
both the State and defense counsel.  "Summarizing the
strengths and weaknesses of the evidence is more
appropriately left for counsel."  State v. Robinson, supra
at 45.

(Ra13, April 22, 2004 Transcript of Decision denying PCR, 13:19-

18:20).  The Appellate Division affirmed without discussion.

(Ra22, March 28, 2006 Appellate Division Opinion, at pg. 3).

24

Based on the trial record, this Court finds no error of constitutional dimension here.  McDowell actually testified at trial.  He was subjected to cross-examination, as contemplated by the Sixth Amendment.[7]  Indeed, defense counsel's cross-examination  was fairly rigorous and competent in attempting to discredit the witness.  Further, the PCR court succinctly

_____

[7]  The Sixth Amendment's Confrontation Clause provides that, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."  In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court of the United States held that the Confrontation Clause bars the admission of non-testimonial hearsay which incriminates the defendant unless the declarant is unavailable and defendant had a prior opportunity for cross examination.  541 U.S. at 68.  With respect to testimonial evidence, the Supreme Court held that the "Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.  We leave for another day any effort to spell out a comprehensive definition of 'testimonial.'  Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.  These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed."  Id.  The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  Crawford, 541 U.S. at 59 n.9 (citing Tennessee v. Street, 471 U.S. 409 (1985)).
Crawford is not applicable here.  The testimonial evidence at issue, McDowell's testimony, occurred at trial and was subject to vigorous cross-examination.  The testimony was simply read back to the same jury, in whole, including both direct and cross-examinations, at their request during deliberations.
Moreover, even if Crawford did apply, a violation of the Confrontation Clause is subject to harmless error review.  See, e.g., Crawford, 541 U.S. at 76 (Rehnquist, C.J., concurring in the judgment) ("to the Court's credit is its implicit recognition that the mistaken application of its new rule by courts which guess wrong as to the scope of the rule is subject to harmless-error analysis"); United States v. Hinton, 423 F.3d 355, 362-63 (3d Cir. 2005).  Here, the evidence against Harris at trial was substantial.  Thus, assuming that a "read-back" of testimonial evidence from the trial itself might be determined a violation of the Confrontation Clause, the error was clearly harmless.

explained that there was no error in the full read back of McDowell's testimony, as requested by the jurors.  Also, there was no evidence that the read back was "orchestrated" by the State to reinforce what Harris believed to be damaging testimony. There are no federal constitutional violations apparent in the read back of McDowell's testimony or the actual testimony itself.

Finally, this Court agrees with respondents' argument that this claim is essentially an issue of state evidentiary procedure, and thus, is not cognizable in a federal habeas action.  See supra fn. 5.

Therefore, Ground Two of the petition arguing that the read-back to the jury of McDowell's trial testimony violated petitioner's Sixth Amendment right to confrontation is denied.

D.   Speedy Trial Claim

Next, Harris complains that his right to a speedy trial, as guaranteed under the Sixth Amendment, was violated because he was held in jail for more than one year before his trial started. Specifically, in his habeas petition at Ground Three, Harris alleges that he was held in a Bronx jail without a warrant and without being indicted by a grand jury.  In June 1996, when his county time had been served, Harris was not released but remained in jail without an arrest warrant.  He was then transferred from the New York jail on July 8, 1996, and held without trial until July 8, 1997, when his trial commenced in the Superior Court of New Jersey, Union County.

26

These issues were not raised in any state court proceedings below.  However, rather than dismiss for non-exhaustion, this Court finds that the claims may be denied for lack of merit.[8]  See 28 U.S.C. § 2254(b)(2).

The Sixth Amendment provides, in pertinent part, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ... ."  U.S. Const. amend. VI.  The right to a speedy trial is "fundamental" and is imposed on the states by the Due Process Clause of the Fourteenth Amendment.  Kloper v. North Carolina, 386 U.S. 213, 223 (1967).  See also Barker v. Wingo, 407 U.S. 514 (1972).  In Barker, the Supreme Court set forth four factors to be weighed and balanced to determine whether the Sixth Amendment's guarantee of a speedy trial has been violated:  (1) the length of the delay; (2) the reason for the delay; (3) whether, in due course, the defendant asserted his

---

[8]  In Ground Three, Harris also asserts a violation of the Fifth Amendment, namely, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, ... ."  Harris claims that he was held in a New York jail for a period of time without a warrant and without an indictment.  These allegations are unsupported by the record.  Testimony by two defense witnesses at trial confirmed that Harris turned himself in to New York police based on his knowledge of his New York probation violation and because he was aware that there was a warrant for his arrest in New Jersey in connection with the murder of Julien Payne.  Furthermore, Detective Richard Gallagher of the Plainfield Police Department testified at trial that there was an open warrant for Harris' arrest in connection with the murder, and that Harris was arrested on November 2, 1995 in New York on that warrant.  (Trial transcript of July 22, 1997, 9T 127:17-128:4).  Harris was indicted on May 1, 1996.  The Fifth Amendment claim will be denied for lack of merit.

right to a speedy trial; and (4) the prejudice to the defendant.
See id. at 530; see also United States v. Dent, 149 F.3d 180, 184
(3d Cir. 1998), cert. denied, Dent v. United States, 525 U.S.
1085 (1999).

None of these enumerated factors is singularly regarded as
either a necessary or sufficient condition to finding a violation
of a petitioner's right to a speedy trial.  Rather, they should
be treated as related factors to be considered with such other
circumstances as may be relevant.  See Barker, 407 U.S. at 533.
However, it is the length of the delay that triggers an inquiry
into the other factors.  "Until there is some delay which is
presumptively prejudicial, there is no necessity for inquiry into
the other factors that go into the balance."  Barker, 407 U.S. at
530.  The Supreme Court has acknowledged that delays of one year
trigger the analysis into the other Barker factors.  Doggett v.
United States, 505 U.S. 647, 652 n. 1 (1992).

The right to a speedy trial attaches on arrest.  In this
case, Harris was arrested in New York on November 2, 1995 based
on a warrant in connection with the New Jersey murder.  However,
Harris admittedly remained in New York custody because he was
serving a sentence on his New York probation violation.  When his
New York term concluded in June 1996, he was not released from
the Bronx jail because of the New Jersey arrest warrant.  A month
before that, a Union County grand jury returned an indictment on
May 1, 1996, while Harris was confined in a New York jail on his

unrelated New York probation violation.  Harris was then
transferred to a New Jersey jail in July 1996.  On July 15, 1996,
Harris appeared in a New Jersey state court and entered a plea of
not guilty to the indictment.  His trial did not commence until
July 8, 1997.  Thus, it would appear that there was a trial delay
of 20 months.

Although twenty months is a lengthy delay which may facially
violate the speedy trial right,[9] the overall circumstances in
this case do not suggest that Harris was denied his right to a
speedy trial.  In fact, it would appear that the trial was
delayed for valid reasons.  First, the record shows that legal
representation for Harris changed hands after eight months, and
Harris' second counsel, Mr. Depa, had assumed representation in
March 1997, only four months before trial commenced.  It also
appears that Depa used these months before trial to investigate
and prepare petitioner's alibi defense.  Notice of the alibi
defense occurred in June 1997, only a month before trial.  Thus,
it would appear that any delay in proceeding to trial was
attributable to the petitioner and his counsel, which was
reasonable given the typical complexity involved in a murder
trial.  Further, there is no indication in the record, or raised

---

[9]   See Doggett v. United States, 505 U.S. 647, 652 n. 1
(1992)(noting that "postaccusation" delays of more than one year
are "presumptively prejudicial" and "mark[] the point at which
courts deem the delay unreasonable enough to trigger the Barker
enquiry").   See e.g., Klopfer v. North Carolina, 386 U.S. 213
(1967) (finding that an eighteen-month delay violated defendant's
right to a speedy trial).

by petitioner, that the prosecution intentionally delayed the proceedings to gain an unfair, tactical advantage.

Moreover, Harris never asserted his speedy trial right at any stage in his pretrial proceedings, in any of his post-trial appellate papers, or at his post-conviction proceedings.

Here, other than the actual length of delay, Harris has not demonstrated any support for the remaining Barker factors. The length of the delay was reasonable given the change of defense counsel within one year, the nature of the charges, and the complexity of a murder trial with many witnesses, and an alibi defense involving several witnesses traveling from the Virgin Islands.

Harris also fails to show that the delay was intentionally caused by the State. Additionally, Harris did not raise this speedy trial claim until this federal habeas petition, and he has failed to show any prejudice to him from the delay in trial. Indeed, had the trial commenced any sooner than it did, petitioner may have been prejudiced by the lack of alibi witnesses who were contacted shortly before the trial date in July 1997. In short, Harris does not demonstrate in any manner how the delay impaired his defense or prevented him from gathering evidence and contacting witnesses. No prejudice to the preparation of petitioner's defense is evident in this case. See Barker, 407 U.S. at 532 (Supreme Court recognized impairment of the defense as the most serious factor for consideration).

30

Balancing all of the relevant <u>Barker</u> factors, this Court concludes that the delay of trial for 20 months did not constitute a violation of defendant's right to a speedy trial. Harris is not entitled to relief on this claim.

E.   <u>Detective Gallagher's Inconsistent Testimony</u>

Finally, in Ground Four of his petition, Harris argues that Detective Gallagher committed perjury when he testified at trial that Harris gave a statement.  However, during grand jury testimony, Gallagher testified that Harris did not give a statement when Gallagher saw him at the Bronx jail.  Harris argues that Gallagher's perjury denied him a fair trial in violation of his Sixth and Fourteenth Amendment rights.

Harris raised this claim in his state PCR proceedings. Harris argued that Gallagher lied at trial when he testified that Harris told him that he (Harris) "had no idea that there was a murder warrant for him and that he [Harris] simply turned himself in to the New York police on a violation of probation warrant." (Ra9, July 22, 1997 trial transcript, 129:14-17).  In his PCR proceedings, Harris contended that his trial counsel should have demanded a <u>Miranda</u> hearing on the admissibility of Harris' statement, that the statement was hearsay, that the statement was not revealed in discovery, and that counsel failed to cross-examine Gallagher using the grand jury transcript in which Gallagher had responded affirmatively to the question, "And I

31

take it no statement was taken from [Harris] at [the Bronx House
of Detention]?"  (Ra13, 18:25-19:13).

 The PCR court found that there was no need for a <u>Miranda</u>
hearing because the "preliminary statement by Gallagher to
defendant that he was there regarding a murder investigation is
the usual explanation given by an investigating police officer to
a person being questioned, especially when the person to be
questioned is an inmate facing other charges. ...  The
preliminary statement is not one which Gallagher should have
known would draw a response from defendant so as to invoke
<u>Miranda</u>."  (Ra13, 19:15-23).  The PCR court further stated that
Harris' "response could not have been foreseeable in that the
statement by Gallagher was not one seeking a response.  After
defendant's unsolicited response Gallagher did administer Miranda
warnings and did not take a statement from defendant."  (Ra13,
20:2-6).

 The PCR court also found that Harris' "statement" may have
been hearsay, but was one of the basic exceptions to the hearsay
rule, under N.J.R. EVID. 803(b), where the statement is one of
the criminal defendant.  Moreover, the statement was not withheld
from discovery, as asserted by Harris.  The PCR court noted that
there was "ample evidence that the defense had notice of
Gallagher's intention.  It was set forth in his report which Depa
used to cross-examine Gallagher at trial.  9T (July 22, 1997)
132:18-137:25."  (Ra13, 20:17-24).

Finally, the PCR court found no discrepancy between Gallagher's grand jury testimony and his trial testimony, and that the issue was more a "matter of semantics than substance." The court expressly held that there was no evidence that Gallagher committed perjury:

> Gallagher did not take a "statement" from defendant. Defendant was unwilling to talk to Gallagher other than to tell him he had no knowledge or interest in the murder of the victim and to tell Gallagher he would retain private counsel. D-22A and 21A. Gallagher told the grand jury that contact was made with defendant in the Bronx House of Detention and that no statement was taken. That was an accurate statement. Any attack of Gallagher based on that "inconsistency" would be a mere mincing of words, or as Depa testified, it would be beating a dead horse without any advantage to defendant.
>
> This Court agrees with Depa when he testified that this issue is more a matter of semantics than substance. Depa's decision not to cross Gallagher on this issue is justifiable. He reviewed the grand jury transcript, concluded that no "statement" was made by defendant and made a strategic, informed decision not to nitpick Gallagher about such a trivial matter.
>
> ...
>
> The statement by defendant to Gallagher was elicited by the State to counter testimony by defendant's grandmother and aunt who testified that defendant turned himself into the New York police because he knew he was wanted for murder. At the evidentiary hearing on this PCR, Depa testified that although he viewed it as a throw-away issue in comparison to the alibi defense, the defendant and his family "wanted desperately" to present to the jury that he turned himself in. As such on direct examination by Depa who asked, "When you got there [the New York precinct] what happened?", defendant's grandmother testified that he turned himself in on the "murder and the probation." 6T (July 16, 1997) 81:12-14. Defendant's aunt, Amelia Harris, also testified about what he was going to tell the police prior to going to the precinct and what defendant actually told police when he turned himself in. 6T 95:18-96:9.

> The State properly elicited defendant's statement to
> demonstrate the inconsistency with regard to the reason he
> turned himself in.  It was defendant who originally brought
> this matter before the jury through the grandmother's and
> aunt's testimony.

(Ra13, 21:7-24:24).

This Court finds no error of constitutional dimension regarding Gallagher's testimony at trial.  Further, the state court ruling on this issue was not contrary to, and did not involve an unreasonable application of, clearly established federal law; nor was it based on an unreasonable determination of the facts.  Harris brought the statement into issue when his aunt and grandmother testified, the statement was noted in Gallagher's report, which was part of discovery, and there was simply no inconsistency between Gallagher's grand jury and trial testimony, because the grand jury testimony contemplated a formal statement taken from defendant.  Therefore, this claim will be denied for lack of merit.

## IV.   CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right

34

necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability, pursuant to 28 U.S.C. § 2253(c)(2).

CONCLUSION

For the reasons set forth above, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.  In addition, petitioner's motions for transcripts and for release on bail (Docket Entry Nos. 10 and 12) will be denied, as moot.  An appropriate Order follows.


Dated:  November 21, 2007

                S/Joseph A. Greenaway, Jr.
                JOSEPH A. GREENAWAY, JR., U.S.D.J.